BEFORE THE SECOND DIVISION, MARCH 31, 1965

**No. 69208.**—John A. Steer Company v. United States, protest 62/5920 (Philadelphia).

LAWRENCE, Judge: By the above-enumerated protest, plaintiff herein raises the question of the proper classification and assessment with customs duty of certain devices known synonymously as a rectangular coordinate plotter and rectangular coordinatograph. For tariff purposes, the collector of customs considered said articles to be mathematical instruments and so classified them within the purview of paragraph 360 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 360), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, assessing duty thereon at the rate of 25½ per centum ad valorem.

It is the primary position of plaintiff herein that the devices are drawing instruments of the kind provided for in said paragraph 360, as modified, *supra*, and subject to duty at the rate of 19 per centum ad valorem. Plaintiff makes alternative claims under other provisions of the tariff act, but reference will not be made to them in view of the conclusion reached.

As set forth in the statute, the competing provisions of paragraph 360 read as follows:

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

    Slide rules * * *

    Other * * *_____ 25½% ad val.

Drawing instruments, and parts thereof, wholly or in chief value of metal_____ 19% ad val.

When the case was called for hearing, plaintiff agreed that the articles are in chief value of metal, as found by the collector of customs.

Francis X. McWilliams, the only witness called to testify in this case, appeared on behalf of plaintiff. McWilliams identified himself as sales manager of the Aero Service Corp., actual importer, for the past 7 years. For 17 years prior thereto, he had served as a pilot for the company which operates approximately 35 aircraft in its surveying operations. The business of his company is predominantly topographic mapping, geophysical surveys in connection with searching for oil, ore, or metal deposits, and the preparation of relief maps used in schools to teach geographic configurations and how the terrain varies. McWilliams testified that he had been the project engineer or chief pilot for his company in Africa, Venezuela, Cuba, and Canada, as well as in the United States, doing work for such companies as United States Steel, Bethlehem Steel, Gulf Oil, and others in connection with mapping operations.

On being shown the invoice covering the instant importation, McWilliams stated he was familiar with the rectangular coordinate plotter and rectangular coordinatograph listed therein and that the articles are identical pieces of

equipment. He testified that coordinatographs had come into use by his company because of their extreme accuracy and ability to draw lines which are parallel to each other, essential characteristics in the creation of topographic maps.

Received in evidence as plaintiff's illustrative exhibit 1 was a photograph of the coordinatograph in controversy. As plaintiff's illustrative exhibit 2, there was received in evidence the bottom of page 4 and the whole of page 5 of a pamphlet entitled "Coordinatographs." When asked to state what a coordinatograph is, the witness testified that it is a unit which is used to draw lines. It is equipped with a ruling pen and is used to draw lines parallel to X and Y. The witness explained that X is referred to as the abscissa and Y as the ordinate direction, or, in other words, the X dimension would be from east to west and the Y would be from north to south.

A coordinatograph is used to draw lines on any surface that will accept a line, such as paper, glass, plastic, and metal, and only draws lines which are parallel to each other with a high degree of accuracy, namely 15/10,000ths of an inch in 47½ inches.

It was McWilliams' testimony that since a coordinatograph only draws lines, it does not provide you with any figures with which you can compute.

On cross-examination, the witness stated that a coordinatograph has a microscope which, in turn, contains a reticle, which is a cross-hair utilized to observe the intersection of lines or the beginning of a line. It also has a circular reticle used essentially for the same purpose as the cross-hair reticle.

Consideration has been given to the cases cited by the parties in their briefs. We are of the opinion that the determination of this case is controlled by the decision of our appellate court in *United States* v. *F. Weber Co., Inc.*, 25 CCPA 433, T.D. 49506, wherein that court held that the pantograph there in issue, designed to produce a reduced, enlarged, or an exact copy of a plane figure, and capable of minute mathematical precision in producing the various outlines it was its function to produce, constituted a mathematical instrument of the kind provided for in paragraph 360 of the Tariff Act of 1930. In arriving at its decision, the court gave due consideration to the definitions of "mathematical" and "drawing" in the leading lexicographic authorities.

The record before us discloses that with the use of the coordinatographs in controversy, lines drawn in the X dimension (or east-west direction) are precisely parallel to each other, as are lines drawn in the Y dimension (north-south direction). It follows that such lines are perpendicular to each other and, when drawn on a scaled or figured area, grid, or chart, would determine the distance between said lines. Moreover, the record discloses that, with the use of the instant coordinatograph, lines may be drawn with such precision as to be accurate to the extent of 15/10,000ths of an inch in 47½ inches on a grid, chart, or topographic map.

In the opinion of the court, the instant coordinatographs, like the pantographs in the *Weber* case, *supra*, are "instruments * * * capable of minute mathematical precision" and come within the provision for mathematical instruments, as that term is used in paragraph 360 of the Tariff Act of 1930, as modified. We, therefore, affirm the decision of the collector of customs and overrule all claims in the protest.

Judgment will issue accordingly.